FILED 08 OCT 15 08:05 USDC-ORP

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF OREGON

TONYA JO YATES,

                Plaintiff,

        v.

MICHAEL J. ASTRUE,
Commissioner of Social Security

                Defendant.

Civil No. 07-6207-AC

FINDINGS AND RECOMMENDATION

ACOSTA, Magistrate Judge:

        Tonya Jo Yates ("Yates") challenges the Commissioner's decision denying her application for disability insurance benefits under Title II of the Social Security Act ("Act"), and Supplemental Security Income disability benefits under Title XVI of the Act. This court has jurisdiction under 42 U.S.C. § 405(g). For the reasons set forth below, the Commissioner's decision should be REVERSED and REMANDED for further proceedings.

        The court reviews the Commissioner's decision to ensure the proper legal standards were applied and the findings are supported by substantial evidence in the record. 42 U.S.C. § 405(g).

Page 1 - FINDINGS AND RECOMMENDATION                                     [LB]

*Baton v. Comm'r of the Soc. Sec. Admin.*, 359 F.3d 1190, 1193 (9th Cir. 2004). The administrative law judge ("ALJ") applied the five-step sequential disability determination process set forth in 20 C.F.R. § 404.1520. *Bowen v. Yuckert*, 482 U.S. 137, 140 (1987). The ALJ resolved Yates's claim at the fifth step of that process, determining that Yates could not perform her past work, but retained the residual functional capacity ("RFC") to perform other work in the national economy.

A claimant's RFC is an assessment of the sustained work-related activities she can still do on a regular and continuing basis, despite the limitations imposed by her impairments. 20 C.F.R. §§ 404.1520(e), 404.1545; Social Security Ruling ("SSR") 96-8p. The ALJ assessed Yates's RFC as follows:

> [T]he claimant has the residual functional capacity to perform a reduced range of medium exertional work. Lifting is limited to 50 pounds occasionally and 25 pounds frequently. The claimant can stand/walk for six hours in an eight-hour day and can sit for about six hours in an eight-hour day. She is precluded from high-level exposure to hazards such as work at heights or on a scaffold. Interaction with the general public is precluded. Interaction with others (coworkers/supervisors) should be limited and occupations requiring regular teamwork would be precluded. She is precluded from performing detailed tasks, but is capable of understanding and performing simple tasks.

Tr. 19.[1]

Yates alleges she has been disabled at all times since January 1, 2002, due to post traumatic stress disorder, a fatigue state, a borderline personality disorder, hallucinations, panic attacks, a heart condition, chronic back and shoulder pain with limited range of motion, hypothyroidism, and migraine headaches. Tr. 16. Additionally, Yates alleges she was physically, sexually, and

---

[1] "Tr." refers to the official transcript of the administrative record. (Docket # 7).

emotionally abused from infancy and has residuals of those injuries that continue to cause her pain. Tr. 16.

Yates asserts several challenges to the ALJ's decision to deny her benefits application. First, she contends the ALJ failed to consider properly her subjective complaints related to a seizure disorder and mental impairment. Second, she contends the ALJ failed to evaluate the medical evidence properly when assessing her RFC. As a result, Yates argues, the ALJ's RFC assessment and hypothetical to the vocational expert did not accurately reflect all of her functional limitations and led the ALJ to conclude, in error, that she remains capable of performing her past work. Next, Yates maintains that the ALJ failed in his burden to fully develop the record. Finally, Yates challenges the ALJ's failure to consider the lay witness testimony.

As discussed below, this court finds that the ALJ failed to consider properly the medical evidence and to develop the record fully. Both of those grounds require a remand for further proceedings. As such, the court need not reach the other issues propounded by Yates – claimant's credibility, lay witness credibility, and accurate hypothetical – because the ALJ will need to reassess credibility and the hypothetical to the vocational expert based upon the record developed on remand.

A.    **Medical Sources**

Yates contends that the ALJ failed to consider "the diagnoses and observations of the medical professionals that saw Ms. Yates for purposes of disability determination and chose instead to consider only a few of the medical providers['] observations, without offering clear and convincing reasons or specific and legitimate reasons for rejecting the other medical providers' testimony." (Pl.'s Reply Br. 6.)

Yates relies on a variety of medical sources to support her claim for disability, including physicians, clinical psychologists, nurse-practitioners, and therapists. The standards applied by the ALJ when evaluating and rejecting medical evidence varies depending on the classification of the medical source. *See* 20 C.F.R. § 404.1513. Regardless of the classification of a particular medical provider, the ALJ is never relieved of this obligation to consider evidence submitted by each source and provide some reason for rejecting that evidence. *See* 20 C.F.R. § 404.1527(d) ("Regardless of its source, we will evaluate every medical opinion we receive.").

To establish a physical or mental impairment, a claimant must provide evidence from medical sources. The Code of Federal Regulations ("Code") defines "acceptable medical sources" as: licensed physicians, optometrists and, podiatrists; licensed or certified psychologists; and qualified speech language pathologists. 20 C.F.R. § 404.1513(a) (2007). Further, a distinction is made among the opinions of three types of physicians: (1) those who treat the claimant ("treating physician"); (2) those who examine but do not treat the claimant ("examining physician"); and (3) those who neither examine nor treat the claimant, but review the claimant's medical records ("non-examining physician"). *See* 20 C.F.R. § 404.1527(d); *see also Holohan v. Massanari*, 246 F.3d 1195, 1201-02 (9th Cir. 2001).

Generally more weight is ascribed to the opinion of a treating source than to the opinions of physicians who do not treat the claimant. *See Holohan*, 246 F.3d at 1201-02; *Lester v. Chater*, 81 F.3d 821, 830 (9th Cir. 1996). The ALJ may not reject the uncontroverted opinion or ultimate conclusions of a treating physician (or examining physician) without providing "clear and convincing" reasons supported by substantial evidence in the record. *Lester*, 81 F.3d at 830-31. "The ALJ can meet this burden by setting out a detailed and thorough summary of the facts and

conflicting clinical evidence, stating his interpretation thereof, and making findings." *Magallanes*

*v. Bowen,* 881 F.2d 747, 750 (9th Cir. 1989) (quotations and citation omitted).

The administrative record includes evidence from numerous treating and examining

physicians, only a few of whom the ALJ specifically referenced in his decision.  For example:

- • In July 2002, Dr. Meg Eastman, Ph.D., conducted a comprehensive psychological examination of Yates and determined that she suffered "significant chronic mental illness."  Tr. 123-33.  Dr. Eastman assessed Yates's functioning on the Global Assessment of Functioning ("GAF") scale at 40, indicating impairment in reality testing or communication, or major impairment in several areas such as work or school, family relations, judgment, thinking, or mood. *See* Am. Psychiatric Ass'n, *Diagnostic & Statistical Manual of Mental Disorders* 34 (4th TR. ed. 2000).

- • In May 2003, Dr. David Sweet, Ph.D., conducted a "Comprehensive Psychological Evaluation" and diagnosed Yates with "Personality Disorder NOS, with Characteristics of Dependent and Borderline Personality Disorders." Tr. 134-41.

- • In November 2003, Dr. Paul Donald Qualtere-Burcher, MD, reported in a hospital discharge summary that Yates's "[p]renatal history was complicated by . . . history of poorly defined mental illness." Tr. 142.

- • In August 2006, Dr. Kathleen Wilken conducted a neurological evaluation of Yates and assessed her with "[e]pisodic minor alterations in level of consciousness . . . chronic post traumatic stress disorder . . . depression . . . .[a]uditory hallucinations, raising concern with regards to the possibility of either schizophrenia or schizophreniform disorder." Tr. 682-83.

The ALJ's decision fails to explain and analyze, or even to mention, the assessment of Dr.

Sweet, an examining licensed clinical psychologist.  Dr. Sweet conducted a comprehensive

psychological evaluation of Yates, and submitted a nine-page report detailing Yates's mental status

and providing his professional diagnostic impressions.  Tr. 134-41.  Additionally, despite Dr.

Wilken's thorough neurological evaluation of Yates, the ALJ's decision references Dr. Wilken only

to highlight Dr. Wilken's statements that Yates was "difficult to nail . . . down" and that Yates's

review of systems checklist was unhelpful.  The ALJ completely ignored the medical evidence

provided by Dr. Wilken's three-page report.  Finally, the ALJ did set out a summary of Dr.

Eastman's assessment of Yates, but he failed to state his interpretation or make findings in rejecting

Dr. Eastman's medical assessment that Yates "suffered significant chronic mental illness."  Tr. 20-

21.  Such complete disregard of an acceptable medical source is clear error and requires remand.

*See, e.g., Cotton v. Bowen*, 799 F.2d 1403, 1408-09 (9th Cir. 1986) (finding legal error where ALJ's

findings completely ignored medical evidence without giving specific, legitimate reasons for doing

so), *superseded by statute on another point as stated in Bunnell v. Sullivan,* 912 F.2d 1149 (9th Cir.

1990); *accord Lingenfelter v. Astrue*, 504 F.3d 1028 (9th Cir. 2007).  *See also* SSR 96-6p ("[ALJs]

and the Appeals Council may not ignore . . . [medical and psychological consultants and physicians']

opinions and must explain the weight given to these opinions in their decisions.").

With respect to other medical sources, the Code provides:

> In addition to evidence from the acceptable medical sources listed in paragraph (a)
> of this section, we may also use evidence from other sources to show the severity of
> your impairment(s) and how it affects your ability to work.  Other sources include,
> but are not limited to --
>
> > (1) Medical sources not listed in paragraph (a) of this section (for
> > example, nurse-practitioners, physicians' assistants, naturopaths,
> > chiropractors, audiologists, and therapists). . . .

20 C.F.R. § 404.1513(d); *see also* SSR 06-03p.

The opinions of these other sources are "important," particularly those of nurse practitioners

and licensed clinical social workers, when determining "key issues such as impairment severity and

functional effects."  SSR 06-03p at *3.  The factors an ALJ should consider to determine the weight

to give to the opinion of these other medical sources include:  how long the source has known the

claimant and how often the source has seen the claimant; the consistency of the source's opinion

with other evidence in the record; the relevance of the source's opinion; the quality of the source's

explanation of his opinion; and the source's training and expertise. *Id.* at *4. On the basis of the

particular facts of the case and the above factors, the ALJ may assign greater or lesser weight to a

medical opinion from a not acceptable medical source than the weight assigned to an "acceptable

medical source." *Id.* at *5-6. The ALJ "should explain the weight" assigned to the "not acceptable

medical source" sufficiently to "allow[] a claimant or subsequent reviewer to follow" the ALJ's

reasoning. *Id.* at *6.

     In his written decision, the ALJ largely ignored the evidence from other medical sources;

For example, the record includes the following evidence:

- In February 2002, Nicole Ivey, QMHP/MSW conducted an "Initial Health Assessment" and determined that Yates suffered from schizophrenia. Ivey assessed Yates's functioning on the GAF scale at 46, which indicates serious symptoms or serious impairment in social, occupational, or school functioning, such as inability to keep a job." *See* Am. Psychiatric Ass'n, *Diagnostic & Statistical Manual of Mental Disorders* 32 (4th TR. ed. 2000). Tr. 315. This opinion was confirmed by Erika Waechter, LCSW. Tr. 316.

- In October 2003, Angi Stukenberg, MA, conducted an "Initial and Psychosocial Assessment" and diagnosed Yates with "Adjustment Disorder with Mixed Anxiety and Depressed Mood, Chronic." Tr. 165.

- In January 2006, Carol Bekkenhuis-Johnson, PMHNP, conducted a Psychiatric Evaluation and diagnosed Yates with "Major Depressive Disorder, Unspecified" and "Posttraumatic Stress Disorder." Bekkenhuis-Johnson assessed Yates's functioning on the GAF scale at 38, which indicates "some impairment in reality testing or communication or major impairment in several areas, such as work or school, family relations, judgement, thinking or mood." Am. Psychiatric Ass'n, *Diagnostic & Statistical Manual of Mental Disorders* 34 (4th TR. ed. 2000).

     In his decision, the ALJ did not reference any of these medical sources or their respective

assessments of Yates's mental status. *See* Tr. 13-25. As set forth in SSR 06-03p, the opinions of

nurse practitioners, i.e., Bekkenhuis-Johnson, and licensed clinical social workers, i.e., Ivey and

Page 7 - FINDINGS AND RECOMMENDATION                                      [LB]

Stukenberg, are "important" and "*should be evaluated* on key issues such as impairment severity and functional effects." SSR 06-03p *3 (emphasis added).

A careful review of the ALJ's findings reveals a failure to evaluate the medical evidence of record in accordance with applicable case law, federal regulations and the SSR's. Rather, the ALJ's decision focuses primarily on evidence of Yates's erratic and, at times, inconsistent statements and behaviors. While Yates's credibility is a legitimate factor that the ALJ must assess, it does not excuse the ALJ from a careful and thoughtful consideration of the medical evidence. The administrative record includes a number of troubling assessments from legitimate medical sources regarding Yates's diminished mental capacity. The ALJ alone is charged with the responsibility of determining the impact of those limitations on Yates's ability to function. The ALJ's sweeping rejection of the medical evidence presented by Yates without furnishing sufficient explanation and analysis constitutes legal error. *See, e.g., Smolen v. Chater,* 80 F.3d 1273, 1282, 1286, 1288 (9th Cir. 1996) (finding legal error where ALJ ignored medical evidence of claimant's other impairments and additional legal error where ALJ rejected uncontradicted opinion of treating physician without developing the record); *Cotton,* 799 F.2d at 1408-09. The court recommends a remand for proper consideration of the medical evidence.

**B.**    <u>**Fully Develop the Record**</u>

Yates contends that the ALJ did not properly develop the record with regard to her mental complaints. The ALJ in a social security case has an independent "duty to fully and fairly develop the record and to assure that the claimant's interests are considered," even where a claimant is represented by counsel. *Tonapetyan v. Halter,* 242 F.3d 1144, 1150 (9th Cir. 2001) (quotations and citations omitted). When the claimant is unrepresented, however, the ALJ must be especially

diligent in exploring the relevant facts. *Cox v. Califano,* 587 F.2d 988, 991 (9th Cir. 1978). The ALJ's duty to develop the record fully is also heightened where the claimant may be mentally ill and thus unable to protect her own interests. *Higbee v. Sullivan,* 975 F.2d 558, 562 (9th Cir. 1992).

The duty to develop the record is triggered when the record reflects ambiguous evidence, or the ALJ finds that the record is inadequate to allow for a proper evaluation of the evidence. *Tonapetyan,* 242 F.3d at 1150 (citations omitted). The ALJ may discharge this duty in several ways, including: subpoenaing the claimant's physicians, submitting questions to the claimant's physicians, continuing the hearing, or keeping the record open after the hearing to allow supplementation of the record. *Tidwell v. Apfel,* 161 F.3d 599, 602 (9th Cir.1998); *Smolen,* 80 F.3d at 1288.

Here, a lay person, not an attorney, represented Yates, and her principal complaints were mental impairments. As such, the ALJ had a heightened duty to ensure that the record was complete and ambiguities in the evidence were resolved so that Yates's interests were protected. While the ALJ did not specifically find that the evidence of Yates's mental capacity was ambiguous, or that he lacked sufficient evidence to render a decision, there is substantial evidence in the record to support such a conclusion. For example, the difficulty of diagnosing Yates's mental impairment is noted throughout the record. Dr. Eastman wrote, "Until there can be a stable placement for her, long term monitoring by a therapist, in-home family service provider, and an adult psychiatrist, there will be no diagnostic clarity." Tr. 132. Dr. Wilken noted the need for a follow up MRI, and the difficulties posed by claimant's claustrophobia. Tr. 682. In fact, the ALJ noted the many statements by medical sources reflecting the challenges and ambiguities attendant with diagnosing Yates. *See, e.g.,* Tr. 17. A careful review of the entire record establishes that those

physicians' statements do not suggest malingering or deception but, rather, are evidence of the nature and extent of Yates's mental functioning and bear directly on the disability question.

Additionally, the record includes a number of GAF assessments by legitimate medical sources, including a GAF score of 38 from nurse practitioner Bekkenhuis-Johnson; a GAF score of 40 from Dr. Eastman; and, a GAF score of 46 from therapist Ivey. The ALJ summarily dismissed all of the GAF scores in the record as not relevant to the determination of "occupational capacity." Tr. 23. While it may be permissible for the ALJ to disregard GAF scores for reasons particular to the claimant, the court finds that the GAF ratings, along with the evidence submitted by the mental health providers, require further inquiry regarding the nature and extent of Yates's mental functioning.

Finally, the record includes statements from at least four different Emergency Department doctors that noted Yates's limited mental functioning. *See, e.g.,* Tr. 226 (Dr. Hans Notenboom evaluated Yates in the Emergency Department and noted his clinical impression as "[a]djustment disorder"); Tr. 252 (Dr. Michael A. Barkman evaluated Yates in the Emergency Department and noted "low IQ"); Tr. 238 (Dr. Mary Budke examined Yates in the Emergency Department and reported that "the patient had a rather unusual affect . . . . She was very simple in her thought processes and I would suspect a level of retardation, as she had rather poor insight and understanding of most of our discussion."); Tr. 262 (Dr. Thomas K. Seddon evaluated Yates in the Emergency Department and noted his clinical impression as "[a]djustment disorder"). The ALJ's findings do not reference either Drs. Notenboom or Budke. Tr. 13-25. While the ALJ's decision does reference Dr. Barkman's examination of Yates, he simply quotes Dr. Barkman's statement that Yates is "at best [] completely unreliable[,]" but completely fails to consider Dr. Barkman's assessment that

Yates possessed a "low IQ." Similarly, the ALJ mentions Dr. Seddon's report to note an inconsistency in Yates's reporting of drug abuse, but ignores his assessment of adjustment disorder. To a person, these physicians noted questions concerning Yates's mental functioning. Those questions were left unresolved by the ALJ's decision. The administrative record regarding the nature and extent of Yates's mental impairments and their resulting limitations is ambiguous and incomplete. The court recommends a remand for further development of the record with regard to Yates's mental capacity and the impact on her RFC.

## *Recommendation*

Based on the foregoing, the ALJ's decision that Yates was not disabled and is not entitled to disability insurance benefits under Title II of the Act, and Supplemental Security Income disability benefits under Title XVI of the Act is not based on correct legal standards or supported by substantial evidence. The Commissioner's decision should be REVERSED and REMANDED for additional proceedings.

## *Scheduling Order*

Objections to the Findings and Recommendation, if any, are due October 29, 2008. If no objections are filed, the Findings and recommendation will be referred to a district court judge and go under advisement on that date. If objections are filed, any party may file a response within fourteen days after the date the objections are filed. Review of the Findings and Recommendation will go under advisement when the response is filed.

Dated this ⁄⁄ day of October, 2008

John V. Acosta
United States Magistrate Judge

Page 11 - FINDINGS AND RECOMMENDATION                                    [LB]